## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DANI HOURANI,

Petitioner,

Case No. 95-80071

v.                                          Hon. Bernard A. Friedman

UNITED STATES OF AMERICA,

Respondent.

_____/

**United States' Combined Response and Brief Opposing
[204] Petition for Relief under the First Step Act of 2018**

# Table of Contents

Table of Authorities ...................................................................... iii

Introduction ................................................................................. 1

Facts .......................................................................................... 3

Argument .................................................................................... 6

  I.  Hourani should not be granted compassionate release. ............... 6

      A.  Hourani is not eligible for compassionate release. ................. 7

      B.  Hourani's release would be improper considering the factors set forth in 18 U.S.C. § 3553(a). ................................ 19

  II.  Hourani's alternative constitutional argument does not warrant relief. .............................................................. 22

      A.  Hourani's Eighth Amendment claim is not properly before the Court .................................................... 22

      B.  Hourani cannot succeed on the merits of his Eighth Amendment claim. ............................................... 23

Conclusion .................................................................................. 28

Certificate of Service .................................................................... 30

# Table of Authorities

**Cases**

*Charles v. Chandler,*
　180 F.3d 753 (6th Cir. 1999) ............................................................. 23

*City of Boerne v. Flores,*
　117 S. Ct. 2157 (1997) ....................................................................... 24

*Coley v. Bagley,*
　706 F.3d 741 (6th Cir. 2013) .............................................................. 6

*Commonwealth v. Bredhold,*
　2017 WL 8792559 (Ky. Cir. Ct. Aug. 1, 2017) .................................... 28

*Cruz v. United States,*
　2018 WL 1541898 (D. Conn. Mar. 29, 2018)....................................... 27

*Dillon v. United States,*
　560 U.S. 817 (2010)............................................................................. 8

*Graham v. Florida,*
　560 U.S. 48 (2010)............................................................................. 25

*Illinois v. House,*
　142 N.E.3d 756 (Ill. App. 1 Dist. June 27, 2019)................................ 28

*In re NVR L.P.,*
　206 B.R. 831 (Bankr. E.D. Va. 1997) ................................................. 24

*Miller v. Alabama,*
　567 U.S. 460 (2012)....................................................................passim

*Missouri v. Barnett,*
　598 S.W.3d 127 (Mo. 2020) ............................................................... 27

*Patterson v. Davey,*
　2018 WL 2047002 (E.D. Cal. May 1, 2018).......................................... 27

*Quiros-Morales v. United States,*
　2020 WL 211404 (M.D. Pa. Jan. 13, 2020) ........................................ 27

*Roper v. Simmons,*
　543 U.S. 551 (2005)........................................................................... 25

*Smith v. Granholm,*
　2007 WL 4454300 (E.D. Mich. Dec. 14, 2007) .................................... 22

*United States v. Arana,*
　2020 WL 2214232 (E.D. Mich. May 7, 2020) ...................................... 20

*United States v. Beck,*
　425 F. Supp. 3d 573 (M.D.N.C. 2019)................................................. 12

iii

*United States v. Brown*,
   411 F. Supp. 3d 446 (S.D. Iowa 2019)................................................ 12

*United States v. Brummett*,
   2020 WL 1492763 (E.D. Ky. Mar. 27, 2020)...................................... 11

*United States v. Cantu*,
   423 F. Supp. 3d 345 (S.D. Tex. 2019)............................................12, 18

*United States v. Cantu-Rivera*,
   2019 WL 2578272 (S.D. Tex. June 24, 2019)..................................... 12

*United States v. Gray*,
   2019 WL 4564735 (N.D. Ohio Sept. 20, 2019).................................. 14

*United States v. Haynes*,
   2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020)..................................... 17

*United States v. Houston*,
   529 F.3d 743 (6th Cir. 2008)................................................................ 7

*United States v. Jackson*,
   751 F.3d 707 (6th Cir. 2014)................................................................ 8

*United States v. Johns*,
   2019 WL 2646663 (D. Ariz. June 27, 2019)...................................... 16

*United States v. Kincaid*,
   802 F. App'x 187 (6th Cir. 2020).......................................................... 19

*United States v. Knight*,
   2020 WL 3055987 (E.D. Mich. June 9, 2020) ................................... 19

*United States v. Lynn*,
   2019 WL 3805349 (S.D. Ala. Aug. 13, 2019)...........................9, 10, 13

*United States v. Marks*,
   2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020) ................................... 15

*United States v. Marshall*,
   736 F.3d 492 (6th Cir. 2013)................................................................ 26

*United States v. Marshall*,
   954 F.3d 823 (6th Cir. 2020)................................................................ 8

*United States v. Martin*,
   916 F.3d 389 (4th Cir. 2019)................................................................ 15

*United States v. McGraw*,
   2019 WL 2059488 (S.D. Ind. May 9, 2019)....................................... 16

*United States v. Millan*,
   2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) ...................................... 14

*United States v. Mollica*,
   2020 WL 1914956 (N.D. Ala. Apr. 20, 2020) ..................................... 8

*United States v. Murphy,*
  2020 WL 2507619 (E.D. Mich. May 15, 2020) ................................... 19
*United States v. Overcash,*
  2019 WL 1472104 (W.D.N.C. Apr. 3, 2019) ...................................... 11
*United States v. Robinson,*
  2020 WL 3603688 (E.D. Mich. July 2, 2020) ..................................... 15
*United States v. Ross,*
  245 F.3d 577 (6th Cir. 2001) .............................................................. 7
*United States v. Saldana,*
  2020 WL 1486892 (10th Cir. Mar. 26, 2020) ..................................... 8
*United States v. Sapp,*
  2020 WL 515935 (E.D. Mich. Jan. 31, 2020) .................................... 11
*United States v. Shields,*
  2019 WL 2359231 (N.D. Cal. June 4, 2019)...................................... 10
*United States v. Shill,*
  740 F.3d 1347 (9th Cir. 2014) ........................................................... 26
*United States v. Torres,*
  2020 WL 2815003 (S.D.N.Y. June 1, 2020) ...................................... 11
*United States v. Washington,*
  2019 WL 6220984 (E.D. Ky. Nov. 21, 2019) ..................................... 13
*United States v. Willingham,*
  2019 WL 6733028 (S.D. Ga. Dec. 10, 2019) ..................................... 10
*United States v. Winner,*
  2020 WL 2124594 (S.D. Ga. Apr. 24, 2020) ..................................... 11
*United States v. Zullo,*
  2019 WL 7562406 (D. Vt. Sept. 23, 2019).......................................... 13
*Williams v. Garman,*
  2019 WL 1046024 (E.D. Pa. Mar. 4, 2019) ....................................... 27

## Statutes
18 U.S.C. § 3582(c)(1)(A)........................................................passim
18 U.S.C. § 3582(c)(2)...................................................................... 8
28 U.S.C. § 2255.............................................................2, 22, 23, 27
28 U.S.C. § 994(t)...................................................................passim
Section 608 of the First Step Act...............................................2, 21, 23

## Other Authorities
BOP Program Statement 5050.50 ....................................................... 9
USSG § 1B1.13.........................................................................passim

## Introduction

A jury convicted Dani Hourani of conspiring to murder a federal witness and aiding and abetting the killing of another person with intent to prevent that person from communicating with law enforcement or testifying at an official proceeding. He is serving a mandatory life sentence for the aiding-and-abetting conviction. Now, having served 27 years in prison, Hourani seeks a reduced sentence under the First Step Act, arguing that Congress has either (1) loosened the substantive criteria for compassionate release; or (2) expanded the Eighth Amendment such that a mandatory life sentence for a 19-year-old offender is constitutionally invalid. Neither argument has merit.

Section 603(b) of the First Step Act gives defendants like Hourani, who have exhausted their administrative remedies, the ability to seek compassionate release on their own motion. 18 U.S.C. § 3582(c)(1)(A). But it does not expand the substantive criteria or permit courts to find new "extraordinary and compelling reasons" for compassionate release. Nor did Congress override its mandate that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Thus, Hourani's rehabilitation,

impressive as it is, does not make him eligible for release. Nor is there anything extraordinary about Hourani receiving a mandatory sentence after rejecting the government's plea offers and proceeding to trial.

Moreover, to release a murderer who has barely reached middle age would be improper considering the factors in 18 U.S.C. § 3553(a). An adult at the time, Hourani ordered a hit on a federal witness, and an innocent man lost his life. Further, due to the nature of his crime, Hourani's release would not instill confidence by cooperators, who put their lives on the line for the greater good and are often instrumental in successful prosecutions.

As for Hourani's argument that Section 608 of the First Step Act renders his sentence unconstitutional, he has not invoked the proper mechanism. Such challenge must be pursued, if at all, in a successive motion under 28 U.S.C. § 2255. In any event, Hourani's sentence is constitutionally valid. Under *Miller v. Alabama*, 567 U.S. 460 (2012), mandatory life sentences do not violate the Eighth Amendment where, as here, the defendant was at least 18 years old when he committed the crime. Section 608, which defines "youth" for purposes of a prison pilot

program, does not purport to extend the line drawn in *Miller*. Nor does Congress have the authority to redefine constitutional limits by statute.

In sum, the Court should decline Hourani's request to redraw constitutional boundaries or transform compassionate release into an amorphous concept that will undermine the public's interest in the finality of judgments and the overall integrity of our justice system.

### Facts

In 1992, law enforcement investigated a heroin trafficking ring led by Hourani's father, Ibrahim Hourani. (Ex. 1, Trial Tr. Day 1 at 109-135). Law enforcement used a cooperating federal witness, Hassan Cheaib, who made several controlled buys of heroin from Ibrahim. (*Id*.). Ultimately, Cheaib participated in a controlled delivery of heroin to Ibrahim, which resulted in both men's arrest. (*Id*. at 117-120).

A search warrant, later executed at Ibrahim's home, identified Cheaib as the cooperator. (*Id*. at 130-33; Ex. 2, Trial Tr. Day 2 at 24-25). When the affidavit was mistakenly not sealed, Ibrahim obtained it through his attorney and informed his associate, Abbas Aldirani, that Cheaib was the cooperator. (Ex. 1, Trial Tr. Day 1 at 130-334; Ex. 2, Trial Tr. Day 2 at 24-25).

During this same time, Aldirani also associated with Ibrahim's son, Dani Hourani. (Ex. 2, Trial Tr. Day 2 at 14-15). Aldirani would supply Hourani with heroin to sell to customers. (*Id.*). Shortly after the affidavit's disclosure, Hourani began making threats against Cheaib's life and inquiring about a "contract" to kill Cheaib. (Ex. 3, Trial Tr. Day 3 at 134-136). Hourani asked the Rahal brothers, two of his drug customers, whether they could find someone capable of carrying out a "hit" against Cheaib. (*Id.*; Ex. 2, Trial Tr. Day 2 at 38). Hourani was willing to pay $10,000 for the job. (Ex. 4, Trial Tr. Day 5 at 15). Acting on Hourani's request, Haidar Rahal asked a drug customer whether he knew anyone who could "kill a rat," and the customer introduced him to Tony Owens. (Ex. 3, Trial Tr. Day 3 at 136-141; Ex. 5, Trial Tr. Day 6 at 15, 25-26).

On December 2, 1992, Cheaib was with his friend, Mohamed "Boudie" Berri. (Ex. 6, Trial Tr. Day 10 at 75-79). Upon seeing Cheaib that day, Hourani called Haidar Rahal to tell him that Cheaib had been located and that the plan to kill him could be carried out. (Ex. 4, Trial Tr. Day 5 at 26-29). Hourani also contacted Owens, giving him Cheaib's location. (*Id.* at 29). At about 2:00 p.m., shots were fired at Cheaib and

Boudie. (Ex., Trial Tr. Day 10 at 75-79). Cheaib escaped without injury, but Boudie incurred three gunshot wounds and died. (*Id.*). After the shooting, Hourani called Aldirani and mistakenly told him that Cheaib had been killed. (Ex. 2; Trial Tr. Day 2 at 45-49). Hourani sounded happy in this conversation. (*Id.* at 46). Hourani also admitted to Aldirani that he was responsible for the shooting. (*Id.* at 50-55).

According to the attorney (now judge) who prosecuted the case, "several individuals in the heroin distribution conspiracy were responsible for orchestrating and arranging this murder," but "[t]he evidence indicated that Dani Hourani had instigated the scheme because his father, Ibrahim Hourani, was in charge of the heroin ring." (ECF 204-8, Berg Letter, PgID 382). Many of the players cooperated and provided testimony for the government, and they received sentence reductions for their substantial assistance. (*Id.*). Hourani, however, did not cooperate, and he rejected plea offers that would have limited his sentence to roughly 20 years. (*Id.*).

Ultimately, a jury convicted Hourani of conspiring to kill a federal witness, contrary to 18 U.S.C. §§ 371 and 1512, and aiding and abetting the killing of another person with intent to prevent communication with

law enforcement and testimony at an official proceeding, contrary to 18 U.S.C. §§ 1512(a) and 2. The Court sentenced Hourani to mandatory life imprisonment for the aiding and abetting conviction and a concurrent five-year term for the conspiracy conviction.

## Argument

### I.  Hourani should not be granted compassionate release.

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to afford inmates who exhaust their administrative remedies the right to seek compassionate release on their own motion, when previously only the Director of the Bureau of Prisons (BOP) could do so. But Congress did not change the substantive criteria for relief. As before, release must be based on "extraordinary and compelling reasons" and must be "consistent with" the Sentencing Commission's policies. 18 U.S.C. § 3582(c)(1)(A). And even when a defendant qualifies for compassionate release, a court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support a reduction in sentence. *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Here, Hourani is not eligible for compassionate release and a reduction in sentence would be improper considering the § 3553(a) factors.

## A. Hourani is not eligible for compassionate release.

### 1. Courts lack the authority to determine "other reasons" for compassionate release.

A district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

As Hourani acknowledges, compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); (R. 204, Petition, PgID 266). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as with developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section

3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release, without altering the substantive criteria. *United States v. Saldana*, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Thus, USSG § 1B1.13 remains binding.

Section 1B1.13 limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which are set

8

forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1. The standards in the Program Statement are all tied to the first three categories in USSG § 1B1.13. So, even accounting for the fourth category, compassionate release must be predicated on a reason related to an inmate's medical condition, age, or family circumstances.

Hourani argues that, under the fourth category, "other reasons" are no longer limited to what the BOP Director determines are "extraordinary and compelling." (R. 204, PgID 266-267). According to Hourani, by allowing inmates to move for compassionate release on their own motion, "Congress decided that federal judges are no longer constrained by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons." (R.204, PgID 267). But this theory, based on a purported inconsistency created by the First Step Act, is flawed. There is "no inherent incompatibility between a statute allowing defendants to move for compassionate release and a policy statement allowing BOP a role in determining whether compassionate release is warranted." *United States v. Lynn*, 2019 WL 3805349, at *4–*5 (S.D. Ala. Aug. 13, 2019).

Hourani also suggests that the title of the amended provision, "Increasing the Use and Transparency of Compassionate Release," evidences Congress's intent to give the judiciary the authority to determine "other reasons" for compassionate release. (R. 204, PgID 265). Yet allowing inmates to seek relief on their own motion, in and of itself, increases the use of compassionate release, so do other added provisions requiring notice and assistance to certain inmates in preparing requests. *Lynn*, 2019 WL 3805349, at *3. Because maintaining the BOP's substantive role in determining "other reasons" will neither increase nor decrease the use of compassionate release, the "net effect" is still to increase the use of compassionate release, which fully comports with Congress's intent. *Id*.

The *Lynn* court is not alone in refusing to eliminate the BOP's role in defining "other reasons" for compassionate release, as directed by Congress. *See, e.g.*, *United States v. Shields*, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019) (following policy statements even "where it appears that such guidance has not kept pace with statutory amendments"); *United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (following "Congressional intent that the

Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the compassionate release provision"); *United States v. Overcash*, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) (finding no basis to conclude that the policy statement conflicts with the First Step Act); *United States v. Brummett*, 2020 WL 1492763, at *3 (E.D. Ky. Mar. 27, 2020) (rejecting any "perceived inconsistency" between USSG § 1B1.13 and the First Step Act); *United States v. Winner*, 2020 WL 2124594, at *2 (S.D. Ga. Apr. 24, 2020) (applying USSG § 1B1.13 because § 3582(c)(1)(A) *still* requires courts to abide by its terms irrespective of how Congress titled the amended provision).

Some courts have accepted Hourani's position, but those decisions are unpersuasive. Many rely on another court's conclusion, without independent analysis. *See, e.g., United States v. Sapp*, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020); *United States v. Torres*, 2020 WL 2815003, at *8 (S.D.N.Y. June 1, 2020). Other decisions rest on the false premise that the First Step Act's *procedural* changes, which themselves increase the use and transparency of compassionate release, are somehow inconsistent with the BOP having a *substantive* role in determining circumstances that are "extraordinary and compelling."

11

*See, e.g.*, *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (incorrectly concluding that eliminating the BOP's substantive role is "the only way" to increase the use of compassionate release); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (straining to conclude that the First Step Act's new procedure is "likely inconsistent" with the BOP maintaining its substantive role). As explained above, no such inconsistency exists.

Hourani points the Court to two decisions that he believes warrant special mention, but neither is compelling. (R. 204, PgID 271). In *United States v. Cantu-Rivera*, 2019 WL 2578272, at *1-2 (S.D. Tex. June 24, 2019), the defendant qualified under the age-related category of extraordinary and compelling circumstances, so his release did not depend on a theory of judicial authority. And in *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019), the court applied "the rule of lenity" based on a purported ambiguity in § 3582(c)(1)(A). Yet the statute is not ambiguous. Had Congress wanted to give courts the authority to consider defendant-initiated compassionate release motions *and* the authority to determine "other reasons" that are "extraordinary and compelling," it knew how to do so. Congressional silence does not

render the statute ambiguous or override Congress's prior, undisturbed directive. *See Lynn*, 2019 WL 3805349 ("The Court is not freed by congressional silence but bound by Commission policy statements that Congress has expressly required the courts to follow.").

Because Hourani relies on a theory of judicial authority that does not exist, his petition must be denied.

### 2. Hourani has not identified "extraordinary and compelling reasons" for compassionate release.

Even if such judicial authority did exist, the Court should not deem Hourani's circumstances "extraordinary and compelling." Hourani presents extensive evidence of rehabilitation, but Congress has unequivocally directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 18 U.S.C. § 994(t). The First Step Act did not disturb that directive, and courts must follow it. *See United States v. Zullo*, 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019) ("[R]ehabilitation is specifically excluded as an independent basis for compassionate release."); *United States v. Washington*, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (noting that "§ 994(t) evidences clear congressional intent to bar relief based on rehabilitation alone"); *United States v.*

13

*Gray*, 2019 WL 4564735, at \*3 (N.D. Ohio Sept. 20, 2019) (rejecting the defendant's argument that his exemplary prison record presents an extraordinary and compelling reason for release).

Hourani points to *United States v. Millan*, 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020), where the court granted compassionate release based on rehabilitation alone. The court viewed the defendant's rehabilitation to be "unique and distinctively important" because, given his life sentence, they occurred "without any tangible incentive other than self-improvement." *Id*. at \*9. But Congress prohibited compassionate release based on rehabilitation alone, no matter the circumstances of the rehabilitation. *See* 18 U.S.C. § 994(t). The case is also not appropriate for comparison, since the *Millan* defendant committed drug-related crimes, whereas Hourani is responsible for a murder. Moreover, the suggestion that someone who rehabilitates should be eligible for compassionate release *because of his life sentence* would seem to reward inmates convicted of the most heinous offenses, to the exclusion of less serious offenders who rehabilitate to the same degree. *Millan* is thus unpersuasive.

14

Hourani next relies on *United States v. Marks*, 2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020), where the court reduced by half an inmate's 40-year sentence for drug and firearm offenses based on rehabilitation *and* changes in sentencing law, specifically the 25-year stacking provision of 18 U.S.C. § 924(c). *Id.* at \*16. *Marks* was wrongly decided in that the court improperly used the compassionate release statute as an end-run around Congress's non-retroactivity decision with respect to § 924(c). This Court recently refused to do just that. *See United States v. Robinson*, 2020 WL 3603688, at \*3 (E.D. Mich. July 2, 2020) (Friedman, J.) (rejecting argument that non-retroactive changes to the stacking provision is an extraordinary and compelling reason for a sentence reduction). And, unlike in *Marks*, Hourani's life sentence remains mandatory under current law and he seeks compassionate release based on rehabilitation *alone*, which Congress has expressly forbidden.

The case of *United States v. Martin*, 916 F.3d 389, 392 (4th Cir. 2019) is entirely inapposite because the defendants did not request compassionate release. Instead, they sought a reduced sentence under 18 U.S.C. § 3582(c)(2) based on a sentencing range that the Sentencing Commission has subsequently lowered. The court discussed

15

rehabilitation only in connection with whether a sentence reduction would be appropriate considering the § 3553(a) factors. *Id*. at 398.

Hourani asks the Court to consider the amount of time he has served in deciding his eligibility for compassionate release, but neither case he cites supports that view. (R. 204, PgID 276). In *United States v. McGraw*, 2019 WL 2059488 (S.D. Ind. May 9, 2019), the defendant qualified for release under the medical-related category, and the court considered the amount of time served only in discussing the § 3553(a) factors. *Id*. at *5. And in *United States v. Johns*, 2019 WL 2646663 (D. Ariz. June 27, 2019), the court considered the amount of time served because the defendant sought release under the age-related category, which requires the defendant to have served at least 10 years or 75% of his sentence. *Id*. at *3. Hourani is too young to qualify for release based on his age, and the fact that he has served 27 years of a life sentence is not extraordinary. Indeed, every person serving a life sentence who lives long enough will serve 27 years. Consequently, the amount of time that Hourani has served is relevant only for purposes of § 3553(a).

Hourani next asks the Court to consider the purported "penalty" he received for exercising his constitutional right to a jury trial, relying

16

on *United States v. Haynes*, 2020 WL 1941478, at \*15 (E.D.N.Y. Apr. 22, 2020). (R. 204, PgID 288). But *Haynes* is not the silver bullet that Hourani suggests. Although the court in *Haynes* referred to the defendant's sentence as a "penalty" for having exercised his right to a jury trial, the court based its decision primarily on non-retroactive changes to the stacking provision in § 924(c), contrary to congressional intent, so the case is both wrongly decided and distinguishable.

Here, Hourani is responsible for a murder, and he intended to kill a federal witness. His life sentence—which the law continues to mandate—is just punishment for his crimes, not a penalty. That he turned down plea offers, which would have resulted in less prison had he cooperated, is not extraordinary. Those circumstances occur regularly. And because it is too late for Hourani to cooperate, it would be improper to allow him to reap the benefits of conditional plea offers in determining his eligibility for compassionate release.

Finally, Judge Terrence Berg's letter in 2016 was in support of Hourani's request for *clemency*, not compassionate release. In his letter, Judge Berg distinguished between executive and judicial power:

> The clemency power of the executive, unlike the sentencing function of the judiciary, may consider reasons that lie beyond

17

the statutory sentencing factors and guidelines that the court
must apply: considerations such as whether mercy should be
given in light of an offender's personal remorse and genuine
reformation.

(R. 204-8, PgID 381). Judge Berg offered no opinion on whether

Hourani's rehabilitation satisfies the strictures for compassionate

release under the First Step Act, which Congress had not yet enacted,

so the letter is not extraordinary in that regard. To the extent it has any

value, the letter merely reiterates Hourani's rehabilitation. Moreover,

Judge Berg no longer represents the government, and the government

is *not* advocating for Hourani's release under 18 U.S.C. § 3582(c)(1)(A),

as was apparently the case in *Cantu*, 423 F. Supp. 3d at 352-353.

Hourani's petition thus boils down to a request for compassionate

release based on rehabilitation alone, which fails as a matter of law

under 18 U.S.C. § 994(t). This statutory bar makes good sense, because

without it there would be no limiting principle. If Hourani were

released based on his rehabilitation alone, then every federal inmate

with a decent record of success in prison would inundate the courts with

motions attaching documentation of their achievements, and an inmate

denied relief would continue to refile with each new certificate or

positive reference from a prison case manager. This would result in

18

endless litigation without finality, and judges would effectively take on a parole power, contrary to congressional intent.

For all these reasons, Hourani is not eligible for compassionate release, and his petition must be dismissed.

## B.   Hourani's release would be improper considering the factors set forth in 18 U.S.C. § 3553(a).

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Knight*, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Murphy*, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Hourani eligible for compassionate release, the § 3553(a) factors should still disqualify him.

19

The Court must first consider "the nature and circumstances" of Hourani's crimes along with his "history and characteristics." *See* 18 U.S.C. § 3553(a)(1). Hourani, an adult at the time, was dealing drugs as part of a heroin trafficking ring led by his father, Ibrahim, whom the government had indicted on serious drug charges. Thereafter, Hourani was the central figure in arranging a hit on the government's confidential informant, including procuring the hit man and providing the target's location on the day of the murder. *See, e.g.*, *United States v. Arana*, 2020 WL 2214232, at *6 (E.D. Mich. May 7, 2020) (denying a motion for compassionate release by a 68-year-old defendant who had served 24 years of a life sentence because, among other reasons, his offenses involved arranging the killing of his former partner in a cocaine trafficking enterprise). Although Hourani's rehabilitation is impressive, the seriousness of his crimes looms larger. On balance, this factor weighs against release.

Releasing a convicted murderer would also not reflect the seriousness of Hourani's offenses, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public. *See* 18 U.S.C. § 3553(a)(1). The fact that Hourani targeted a federal witness

carries added significance, since law enforcement often depends on cooperators to investigate and prosecute organized crime. Reducing Hourani's sentence given the circumstances would not instill confidence by cooperators and would diminish the deterrent effect his sentence has on future conspiracies to kill government witnesses.

As for the "kinds of sentences available," Hourani's conviction, to this day, carries a mandatory life sentence. 18 U.S.C. § 3553(a)(3)-(4). Given this mandate, releasing Hourani, from a national perspective, would create an unwarranted sentence disparity. 18 U.S.C. § 3553(a)(6). Hourani is also wrong to suggest that he is similarly situated to his co-defendants. As Judge Berg explained, Hourani "instigated the scheme" to kill a federal witness; a number of those involved in the murder plot, unlike Hourani, "cooperated and provided testimony for the government" in exchange for lower sentences; and a jury acquitted Ibrahim on the murder charge. (R. 204-8, PgID 382).

Hourani seeks the Court's mercy, yet no amount of compassion can bring the victim back or undo the pain felt by his loved ones. And Hourani, even 27 years later, does not express remorse or take responsibility for his actions, downplaying them as "the mistakes of his

teenage years." (R. 204, PgID 287). Accordingly, and despite Hourani's good deeds and accomplishments in prison, reducing his sentence would be improper considering the § 3553(a) factors.

## II.   Hourani's alternative constitutional argument does not warrant relief.

### A.   Hourani's Eighth Amendment claim is not properly before the Court.

In addition to seeking compassionate release under Section 603(b) of the First Step Act, Hourani purports to invoke Section 608 of the First Step Act to challenge the constitutionality of his mandatory life sentence. (R. 204, PgID 289). Yet Section 608 merely directs the BOP to establish a pilot program in which "youth" prisoners are paired with volunteer mentors from faith-based or community organizations. First Step Act of 2018 at § 608(a)(1). It does not provide any basis for a reduced sentence or authorize a defendant to seek that relief in court.

Moreover, since Hourani is challenging the constitutionality of his sentence, his sole recourse is through a § 2255 petition. *See Smith v. Granholm*, 2007 WL 4454300, at *1 (E.D. Mich. Dec. 14, 2007). In Hourani's case, it would be a successive § 2255 petition, and he would be required to obtain permission from the court of appeals before filing

it. *See Charles v. Chandler*, 180 F.3d 753, 758 (6th Cir. 1999). Indeed, Hourani has twice petitioned for and been denied relief under § 2255. (R. 167, Opinion & Order Denying First § 2255 Petition; R. 192, Opinion & Order Denying Second § 2255 Petition). Hourani's petition under § 2241, which he filed in 2018, remains pending in the Southern District of Illinois. *See Hourani v. Werlich*, Case No. 18-cv–00152.

A successive § 2255 petition on the grounds asserted here would also be untimely. Nothing in the First Step Act provided a basis to restart the one-year statute of limitations in 28 U.S.C. § 2255(f). Although the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) might have restarted the one-year clock, that limitations period has long since expired.

For all these reasons, Hourani's constitutional challenge to his mandatory life sentence is not properly before the Court.

## B.  Hourani cannot succeed on the merits of his Eighth Amendment claim.

Even if the Court could consider Hourani's Eighth Amendment claim, the logic behind it is untenable. Hourani relies on *Miller v. Alabama*, 567 U.S. 460 (2012), where the Supreme Court held that mandatory life imprisonment without parole for those "under the age of

23

18" at the time of their crimes violates the Eighth Amendment. He also relies on Section 608 of the First Step Act, which directs the Bureau of Prisons to establish a pilot mentor program for "youths," defined as those "21 years of age or younger" at the time of their crimes. *Id.* at § 608(c). He then inexplicably combines the *Miller* holding with Congress's definition of "youth" in the First Step Act to conclude that life imprisonment without parole for those "21 years of age or younger" at the time of their crimes now violates the Eighth Amendment.

For starters, Congress did not purport to expand the scope of the Eighth Amendment when it enacted the First Step Act and directed the creation of a pilot program to mentor youthful prisoners. The definition of "youth" is tied only to the pilot program and is used to determine eligibility for that program, nothing more. Moreover, Congress cannot redraw constitutional limits by statute as Hourani suggests, even if it wanted to. *See City of Boerne v. Flores*, 117 S. Ct. 2157, 2164 (1997); *In re NVR L.P.*, 206 B.R. 831, 839 (Bankr. E.D. Va. 1997) (observing that "Congress cannot alter the jurisprudence undergirding a provision of the Constitution any more than it, acting alone, can amend the Constitution itself").

24

Beyond the legal infirmities of his position, the constitutional expansion that Hourani is pushing for is extreme. To accept his position would render unconstitutional mandatory life sentences not only as against 19-year-old offenders like Hourani, but also offenders as old as 21 years of age, based on how Congress defined "youth" for purposes of a pilot program. This is important inasmuch as Hourani repeatedly refers to his "teenage" status at the time of his crimes. The relief he seeks would extend to non-teenage offenders, including 21-year-olds.

Further, the common thread running through more than 15 years of Supreme Court decisions concerning punishment against juveniles is where to draw the line. As explained in *Roper v. Simmons*, 543 U.S. 551 (2005), "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood." *Id.* at 574. In *Roper*, the Court concluded that 18 is "the age at which the line for death eligibility ought to rest." *Id.* Years later, in *Graham v. Florida*, 560 U.S. 48 (2010), the Court held that life sentences without parole as against offenders under the age of 18 violates the Eighth Amendment, again relying on the line society draws between childhood and adulthood. *Id.* at 74-75. It thus came as no surprise when the Court, in *Miller*,

concluded that mandatory life sentences for offenders under 18 years of age violate the Eighth Amendment.

The Sixth Circuit has likewise deemed 18 years of age to be the line separating juveniles from adults. In *United States v. Marshall*, 736 F.3d 492 (6th Cir. 2013), the defendant, who received child pornography between the ages of 18 and 20, challenged his mandatory minimum sentence. *Id.* at 498. He argued that his immaturity due to a rare physiological condition warranted extending him the protections afforded to juveniles under the Eighth Amendment, as in *Miller*. *Id.* But according to the Sixth Circuit, line drawing based on chronological age is necessary. *Id.* Pointing to the need for "efficiency and certainty" in the law, the Sixth Circuit held that a person's eighteenth birthday marks the bright line separating adults from juveniles for purposes of the Eighth Amendment, with no room for exceptions, "not even for offenders with rare physiological conditions." *Id.* at 500. *Marshall* is published and therefore binding.

*Marshall* is also not an outlier. Many courts have rejected requests to extend *Miller*. *See, e.g.*, *United States v. Shill*, 740 F.3d 1347, 1356-57 (9th Cir. 2014) (categorical rules in *Miller* inapplicable

26

where defendant was not a juvenile at the time of the offense); *Missouri v. Barnett*, 598 S.W.3d 127 (Mo. 2020) (concluding that the Eighth Amendment prohibition against life sentences without parole for juvenile offenders did not extend to 19-year-old offender); *Quiros-Morales v. United States*, 2020 WL 211404, *1 (M.D. Pa. Jan. 13, 2020) (declining to extend *Miller* to a 19-year-old offender); *Patterson v. Davey*, 2018 WL 2047002, at *11 (E.D. Cal. May 1, 2018) ("Petitioner fails to cite any authority for his argument that Miller must be extended to a 19–year-old."); *Williams v. Garman*, 2019 WL 1046024, *3 (E.D. Pa. Mar. 4, 2019) (rejecting argument to redraw the line established in *Miller*).

Hourani points to three cases that he asserts support extending the bright line rule in *Miller* to fit his case. But close examination reveals otherwise. In *Cruz v. United States*, 2018 WL 1541898 (D. Conn. Mar. 29, 2018), the defendant, unlike Hourani, obtained appellate permission to file a successive § 2255 petition, and the court relied on expert testimony to conclude that the line in *Miller* should be moved to include 18-year-old offenders, but not 19-year-old offenders like Hourani. *Id*. at *25. An appeal is pending in *Illinois v. House*, 142

27

N.E.3d 756 (Ill. App. 1 Dist. June 27, 2019), where the court concluded that imposing a mandatory life sentence on a 19-year-old violated the Illinois Constitution. And finally, in *Commonwealth v. Bredhold*, 2017 WL 8792559, at *6 (Ky. Cir. Ct. Aug. 1, 2017), the court concluded that Kentucky's death penalty statute violates the Eighth Amendment as against offenders under 21 years old; the court did not opine on mandatory life sentences. None of these cases match Hourani's request to extend *Miller*'s prohibition against mandatory life sentences by four years to include 21-year-old offenders based on the First Step Act's definition of "youth" for purposes of a pilot mentorship program.

For these reasons, Hourani's Eighth Amendment claim, which is not properly raised to begin with, fails on the merits.

## Conclusion

The Court should deny Hourani's petition for relief. The government also requests that the Court stay any release order for 30 days or until the completion of any appeal proceedings if the government appeals, whichever is later.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/ Jessica V. Currie
Jessica V. Currie
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9531

Dated: July 27, 2020                    jessica.currie@usdoj.gov

29

## Certificate of Service

I certify that on July 27, 2020, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

s/ Jessica V. Currie
Assistant U.S. Attorney